**John M. PERGOLESE and Peggy Doug Pergolese**

v.

**The STANDARD FIRE INSURANCE CO., one of the Travelers Insurance Companies d/b/a Travelers Property Casualty and Travelers Group**

**Appeal of: The Standard Fire Insurance Co., Appellant**

**No. 1467 EDA 2014**

Superior Court of Pennsylvania.

Argued December 1, 2015

Filed April 11, 2017

Brooks R. Foland, Camp Hill, for appellant.

Robert C. Beck, Jr., Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., STABILE AND STRASSBURGER,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Standard Fire Insurance Company ("Standard Fire") appeals from the judgment entered April 11, 2014, in this declaratory judgment action. The trial court granted appellees' motion for summary judgment after finding that they were entitled to stacking of underinsured motorist benefits. After careful review, we affirm.

The relevant facts and procedural history underlying this appeal are as follows. Appellees are husband and wife who reside in Worcester, Montgomery County. In the early 1990s, Appellees applied for personal automobile insurance with Standard Fire's predecessor in interest, Aetna Insurance Company, through their insurance agent. (Action for Declaratory Judgment ("Complaint"), filed 12/17/10, at ¶ 4; Answer with New Matter, filed 4/28/11, at ¶¶ 34–35; Appellant's Motion for Summary Judgment, filed 12/12/13 ("Motion"), at ¶ 2). On July 27, 1994, Appellees signed an Aetna Option Selection Form indicating that they chose non-stacked underinsured motorist ("UIM") coverage on policy number 020185337–101–1 ("20185337"). (Motion, Exhibit C).

On May 29, 1996, Peggy Pergolese signed a rejection of stacked UIM coverage form for this policy on behalf of Appellees with John Pergolese's full knowledge and consent. (Motion at ¶ 3).

* Retired Senior Judge assigned to the Superior Court.

At that time, the insurance policy covered four (4) vehicles. (*Id.* at ¶ 4). Specifically, for the 1996 coverage year, the policy insured the following vehicles: 1989 Chevy Corvette, 1989 Mazda B–2200, 1988 Plymouth Voyager and 1993 Mazda MX–6. (Cross Motion for Summary Judgment, filed 1/13/14 ("Cross Motion"), at ¶¶ 7–8; Exhibits F and G). On August 5, 1996, Appellees executed a form waiving stacked UIM coverage for the second policy, number 036766029–101–1 ("36766029"). (Cross Motion at ¶ 6; Exhibit E). The second policy provided coverage for one (1) vehicle.[Footnote 2]

> [Footnote 2] The Travelers system does not allow the placement of more than four (4) personal vehicles on a policy at one time. (N.T. Deposition of Cody D. Gilmore, 7/22/13 (Cross Motion, Exhibit R) at 58–59[ ) ]; [t]herefore, policy holders wishing to insure more than four personal vehicles at a time are required to obtain a second policy. (*Id.*).

On or about November 19, 1996, Appellees sought to remove the 1988 Plymouth Voyager from coverage on policy number 20185337 and replace it with a 1993 Nissan Pathfinder. (Cross Motion at ¶ 9; Auto Change Form, Exhibit H). The amended declaration sheet effective November 19, 1996 reflected coverage for the following vehicles: 1989 Chevy Corvette; 1989 Mazda B–2200, 1993 Nissan Pathfinder and 1993 Mazda MX–6. (*Id.* at ¶ 10; Exhibit I). Appellees renewed the policy every six (6) months and the declaration sheets showed non-stacked UIM benefits in the amount of $100,000.00. The declaration sheets on policy number 20185337 dated up to and including January 27, 1998, also reflected coverage for the same four (4) vehicles. (*Id.* at ¶ 11; Exhibits J, K and L).

On February 23, 1998, Appellees asked their insurance agent to remove the 1989 Mazda B–2200 from their policy. Unlike their request on November 19, 1996, Appellees did not add a replacement vehicle. (Cross Motion at ¶ 12; Auto Change Form, Exhibit M). The amended declarations page effective February 23, 1998, lists coverage for only three (3) vehicles and a decreased premium. (*Id.* at ¶ 13; Exhibit N).

On April 8, 1998, forty-four (44) days later, John Pergolese called Appellees' insurance agent to request auto insurance coverage for an additional vehicle before he took possession. Mr. Pergolese requested that the agent fax a copy of the insurance card so that Mr. Pergolese would have proof of insurance before taking ownership of a 1990 Ford F–150. (*Id.* at ¶ 14; Auto Change Form, Exhibit O). As requested, the agent faxed a copy of the insurance card with an effective date of April 8, 1998, to the location where Mr. Pergolese was obtaining the tags and title. (*Id.* at ¶ 14–15; Exhibit P). The amended declarations page effective April 8, 1998, showed the premium increase and listed four vehicles as follows: 1989 Chevy Corvette, 1993 Nissan Pathfinder, 1993 Mazda MX–6 and 1990 Ford F–150. (*Id.* at ¶ 16, 18; Exhibit Q).

Appellees' Standard Fire Auto Policy provides in pertinent part as follows:

J.  "Your covered auto" means:

1.  Any vehicle shown in the Declarations.

2.  Any of the following types of vehicles on the date you become the owner:

    a.  a private passenger auto; or

    b.  a pickup or van.

    This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it **within 30 days after you become the owner;** and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire **replaces** one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a **replacement vehicle within 30 days** only if:

a. you wish to add or continue Damage to Your Auto Coverages; or

b. it is a pickup or van used in any "business" other than farming or ranching.

(Policy No. 20185337, Personal Auto Policy at 1; Exhibit A to both Motions for Summary Judgment) (emphasis added).

Appellant did not request a new waiver of stacked coverage from Appellees after the addition of the 1990 Ford F-150 to the three vehicle policy under 20185337. (Cross Motion at ¶ 23). Appellees continued to insure the same four vehicles under policy number 20185337 through July 27, 2001. (*Id.* at ¶ 24; Exhibit A). For the period of July 30, 2000, to July 30, 2001, Appellees insured one vehicle, a 1992 Toyota Pickup under policy number 36766029. (*Id.* at ¶ 25; Exhibit B).

On July 23, 2001, John Pergolese suffered severe injuries when a drunk driver rear ended his 1993 Mazda MX-6. (Motion at ¶ 15; Cross Motion at ¶ 26). Appellees timely submitted a claim for underinsured motorist benefits to Appellant upon receiving the liability policy limits from the tortfeasor and after receiving Appellant's consent to settle and waiver of subrogation. (Complaint at ¶ 8;

Answer at ¶ 8; Motion at ¶ 16). Appellees asserted that they were entitled to stack UIM benefits according to the number of vehicles on their two (2) policies up to a limit of $500,000.00. (Complaint at ¶ 27; Motion at ¶ 17). Appellant denied that Appellees were entitled to stack their policy benefits. (Motion at ¶ 18).

On December 17, 2010, Appellees filed an action for declaratory judgment. On April 28, 2011, Appellant filed its answer with new matter. Appellees replied to the new matter on June 28, 2011. The parties conducted discovery, including requests for admissions and depositions.

In particular, an underwriter for Travelers Insurance testified at deposition as follows:

Q. Well, my question to you was from your understanding of Travelers, the insurance, if someone owns four vehicles on a policy and they delete a car, so now there's [sic] three cars on that policy, and a month and a half or two months later that insured buys a new car and asks for it to be added to the policy?

A. That would be an additional vehicle.

Q. Okay. That would be an addition, an additional vehicle; is that correct?

A. That's correct.

Q. All right. That would not be considered a replacement vehicle?

A. Not if it was—if it was not replaced at that time.

Q. Okay. So, meaning that it's your understanding at Travelers that dealing with replacement vehicles is when cars are added and deleted at the same time?

A. Correct.

\* \* \* \*

Q. All right. I don't want—so somebody has four cars and they delete a vehicle on that policy, all right? And in this case John Pergolese owned four cars on the policy, and one of the cars he deleted, okay, because it was junked or there was an issue. It didn't run anymore.

A. Okay.

Q. And then a month and a half later he buys a car and adds a new car to that policy.

A. That would be an additional vehicle.

Q. Okay. That would not be considered replacement because it wasn't done at the same time, but that would [be] an additional vehicle?

A. That is correct.

Q. Because when they're advising the agent of the new car, he's purchasing coverage on that new car?

A. That is correct.

(N.T. Deposition of Cody D. Gilmore, 7/22/13 ("N.T. Gilmore Deposition"), at 54–56). Mr. Gilmore also agreed that the addition of the vehicle increased the premium as a policy change. (*Id.* at 68).

Mr. Gilmore explained that "the agents request the majority of changes, and they process them on [Travelers'] system within the office, their office." (*Id.* at 19). The addition of a vehicle to a policy is never done by endorsement, the addition is considered a policy change. (*Id.* at 32–33). At Travelers "[a]n endorsement is a broadening or reduction or change in a coverage level." (*Id.* at 33). Mr. Gilmore also testified as follows:

Q. Is it your understanding that the after-acquired clause that we just referenced is a provision in the policy that insures a new vehicle from the time that insured gets the vehicle until he calls somebody from Travelers to tell them that he just

bought a new car and wants coverage?

A. This provides the coverage between the time that the vehicle—they own the vehicle and the time they contact the agent.

Q. Okay. So once—so, right, so the car is insured from the time that they buy it up until they call Travelers to tell—to tell them about it?

A. Right, that they have advised that they—once they have purchased and they are the owner of the vehicle, this is when this—that's where they obtain their coverage automatically is once they own the vehicle.

Q. All right. What does Travelers require, if you know, from the insured once they call to say I got a new car whatever day it was and I want it insured?

A. The agent would inquire if there was a lienholder, the VIN number, and they would make the change to the policy to add it at that time.

Q. Okay. So, once they got—if there's a lienholder, if there is the VIN, then that—then would it be—in this case, it was an agent that got the call. Then that agent would add the policy?

A. That's correct. They would process the change.

(*Id.* at 44–45).

Appellant filed its Motion for summary judgment on December 12, 2013. Appellees responded in opposition on January 13, 2014, and filed their cross motion at the same time. Appellant replied to the cross motion on February 11, 2014. Upon review of the record, the issues presented to this court, the applicable law and after hearing argument, the undersigned denied Appellant's Motion and granted Appellees' cross motion by separate orders dated April 11, 2014.

Appellant filed a notice of appeal from the court's order granting the cross motion on May 8, 2014. On May 9, 2014, Appellant filed a second notice of appeal from the court's order denying their Motion. The undersigned issued an order on May 27, 2014, directing Appellant to file a Concise Statement of the Errors Complained of on Appeal ("concise statement"). Appellant filed two concise statements on June 6, 2014.

Trial court opinion, 5/29/15 at 2–9.[1]

Appellant, Standard Fire, has raised the following issues for this court's review:

1. Did the trial court err in granting summary judgment in favor of Plaintiffs/Appellees and in denying Defendant's/Appellant's Motion for Summary Judgment, where vehicles were replaced under the continuous after-acquired vehicle provision of the Standard Fire Policy, and were not replaced by endorsement or through the purchase of new insurance, therefore not requiring the execution of new waivers rejecting stacked underinsured motorist benefits?

2. Even if this Court determines that the Ford F–150 constituted an additional vehicle under the Policy, did the trial court still err in granting summary judgment in favor of Plaintiffs/Appellees and in denying Defendant's/Appellant's Motion for Summary Judgment, where the after-acquired vehicle provision of the Standard Fire Policy provided for continuous coverage?

Appellant's brief at 5.

We begin our analysis with our standard of review:

When reviewing a trial court's decision to grant a motion for summary judgment, we adhere to the following standard and scope of review.

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Jones v. Unitrin Auto and Home Insurance Co.*, 40 A.3d 125, 126–127 (Pa.Super. 2012), quoting *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732, 736 (Pa.Super. 2009) (citation omitted). *Jones* further noted that "ordinary summary judgment procedures are applicable to declaratory judgment actions." *Id.* at 127.

*Shipp v. Phoenix Ins. Co.*, 51 A.3d 219, 221 (Pa.Super. 2012).

This case involves the interpretation of the following statute:

§ 1738. **Stacking of uninsured and underinsured benefits and option to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies pro-

---

1. On July 13, 2015, this court quashed the appeal at No. 1466 EDA 2014, taken from the April 11, 2014 order denying appellant's motion for summary judgment, as unnecessary and duplicative.

viding uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (in pertinent part). *Id.* at 221–222.

As in *Shipp*,

This case particularly involves the interpretation of section 1738(c) and whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM coverage, requiring the insurer to present the insured with a new opportunity to waive stacked coverage. This question has been partially answered by our supreme court in two separate decisions involving the same parties.

In *Sackett v. Nationwide Mutual Insurance Co.*, 591 Pa. 416, 919 A.2d 194 (2007) ("*Sackett I*"), the insured acquired a policy for two vehicles and initially waived stacked UM/UIM coverage in the amount of $200,000 ($100,000 unstacked). The insured later added a third vehicle to the policy, and the insurer did not provide the insured with the opportunity to again waive stacked coverage. Following an accident, the insured filed a declaratory judgment action seeking $300,000 in stacked coverage under section 1738 because the insurer failed to provide the insured with the opportunity to waive stacked UM/UIM coverage at the time the third vehicle was purchased and added to the policy.

The trial court ruled that when the same named insured simply adds a vehicle to an existing insurance policy, the insurer does not need to acquire a second waiver of stacked UM/UIM coverage. This court affirmed that decision. On appeal, however, the *Sackett I* court held that the addition of a new vehicle to an existing multi-vehicle policy constitutes a purchase under section 1738(c), such that the insurer was responsible for again acquiring a waiver to stacked coverage.

Following this decision, the supreme court granted re-argument to explore the impact of newly acquired vehicle clauses, almost universally contained in vehicle insurance policies, on its decision in *Sackett I*. In *Sackett v. Nationwide Mutual Insurance Co.*, 596 Pa. 11, 940 A.2d 329 (2007) ("*Sackett II*"), the court noted that there are two common forms used for newly acquired vehicle clauses. The first type provides automatic coverage upon acquisition of the additional

new vehicle, but lapses after a specified, finite amount of time, requiring the insured to apply for new coverage thereafter. The second type provides continuing coverage, usually requiring the insured only to give notice that a new vehicle has been acquired. The *Sackett II* court held that the second type of newly acquired vehicle clause does not trigger an obligation by the insurer to obtain a second waiver of stacked coverage; however, where the newly acquired vehicle clause is of the lapsing, finite variety, *Sackett I* still applies and the insurer must again acquire a waiver of stacked coverage.[Footnote 1]

[Footnote 1] Ultimately, on remand to the trial court, the court conducted a non-jury trial and again ruled that the Sacketts could stack their coverage. On appeal, this court found that newly acquired vehicle provisions of Nationwide's policy with the Sacketts was of the lapsing finite variety which the supreme court had held to require the re-obtaining of waiver by the insurer. As Nationwide had failed to re-obtain such waiver, this court ruled that the trial court properly permitted the coverage to be stacked. *Sackett v. Nationwide Mutual Insurance Co.*, 4 A.3d 637 (Pa.Super. 2010) (*"Sackett III"*), *appeal denied*, 613 Pa. 653, 34 A.3d 83 (2011).

*Id.* at 222.

In *Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa.Super. 2014) (*en banc*), this court's most recent *en banc* pronouncement on the stacking issue, we held that when an insured takes ownership of a vehicle and simultaneously informs his insurer of the new vehicle, the language and purpose of the after-acquired vehicle provision in the policy is never triggered. An after-acquired vehicle provision merely extends existing coverage until the insured notifies the insurer that he wishes to insure the new vehicle under his policy with the insurer. The after-acquired vehicle clause extends temporary, stop-gap coverage, thereby protecting the insured until the policy can be amended.[2] The addition of the vehicle to the policy by the insurer, pursuant to *Sackett I* and *III*, requires a new stacking waiver. In *Bumbarger*, we did not need to look to the analysis of *Sackett II* which only addressed the implication of the after-acquired vehicle clause.[3]

In that case, Peerless issued Helen Bumbarger ("Helen") a personal automo-

---

**2.** Initially, an after-acquired-vehicle clause is essentially a contractual grace period, during which the insurer will automatically provide coverage for a newly acquired vehicle for a brief period, until either other insurance is purchased or the insurer is informed of the new vehicle and the insured asks to have the new vehicle put on the existing policy. This clause gives an insured the time to decide what insurance to ultimately purchase. Otherwise, an insured would be required to purchase insurance contemporaneously with the purchase of the car.[Footnote 5]

[Footnote 5] This might not be a hardship when purchasing a vehicle through a dealership, but might prove burdensome when buying a car through a person to person transaction.

*Toner v. Travelers Home and Marine Ins. Co.*, 137 A.3d 583, 588 (Pa.Super. 2016).

**3.** However, it is important to note that in *Sackett II*, "where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy, *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration." *Sackett II*, 940 A.2d at 334 (citation and footnote omitted). In other words, when an insured notifies an insurer that he has obtained an additional vehicle and that vehicle is added to the policy by the insurer, then the after-acquired vehicle extended coverage expires immediately and a new stacking waiver is required. In most cases, according to *Sackett II*,

bile policy providing motor vehicle coverage for two vehicles, a 1980 Ford F–150 pick-up truck and a 1998 Ford Taurus. *Id.* at 873. Helen rejected stacking of UM/UIM coverage by completing the appropriate forms. *Id.* The ***Bumbarger*** court described the salient facts as follows:

> On July 24, 2007, Helen purchased a third vehicle, a 1995 Ford F–150 pick-up truck. That same day, she notified her insurance agent of the purchase and requested that it be added to and insured under the Policy. The insurance agent notified Peerless about the third vehicle and the vehicle was added to the Policy through a validly executed endorsement, effective July 24, 2007. On October 2, 2009, Helen notified her insurance agent that she had purchased a fourth vehicle, a 1985 Ford Bronco; she requested that this vehicle also be added to and insured under the Policy. The agent notified Peerless and coverage of the fourth vehicle became effective as of the date of purchase; unlike the third vehicle, this fourth vehicle was not added by way of endorsement, but rather its addition was reflected by an amended declarations page.
>
> On December 3, 2009, while driving the 1995 Ford pick-up (third vehicle) Helen was involved in a motor vehicle accident with an uninsured vehicle; she subsequently submitted a claim for UM benefits under the Policy. Helen claimed that she was entitled to stacked UM benefits; Peerless maintained that the original waiver of stacked UM/UIM benefits under the Policy, executed on May 17, 2007, remained in effect.

*Id.* at 873–874 (footnote omitted).

The trial court granted summary judgment for the Bumbargers, finding that be-

cause the third vehicle was added to the policy pursuant to an endorsement, the vehicle was effectively added to the policy's declarations and was covered under the general terms of the policy and not the newly-acquired-vehicle clause. *Id.* at 874. Therefore, the trial court determined that *Sackett I* required Peerless to obtain a new stacking waiver from the Bumbargers when the third vehicle was added to the policy. Because Peerless failed to do so, the Bumbargers were entitled to stacked UM coverage as a matter of law. *Id.* Furthermore, since the Bumbargers were entitled to stacking under the general terms of the policy, the trial court did not determine the duration of any coverage under the policy's newly-acquired-vehicle clause as discussed in *Sackett II. Id.* at n.6.

On appeal, this court affirmed, finding that because the Bumbargers added the third vehicle to the policy by way of endorsement, the newly-acquired-vehicle clause was never triggered:

> [I]n both *Sackett* and this case, the vehicles were added to an existing policy; they were not added to replace a vehicle already covered under the policy. Moreover, although the policies in both *Sackett* and the instant case had after-acquired vehicle clauses, because the additional cars were added on pursuant to the policy's endorsement provision immediately after being purchased and were placed on the policy's declarations' page, the after-acquired vehicle clauses became irrelevant.

*Id.* at 878. "Here, the third vehicle added to the Peerless policy in July 2007 was added by endorsement at the time of purchase onto the declarations page of the

---

only replacement vehicles would be subject to the extended continuous coverage provisions of an after-acquired vehicle provision in that

one vehicle merely replaces another under the same conditions and coverages of the policy.

Policy; at this point, the vehicle was covered by the original policy; therefore, the newly-acquired vehicle clause was not triggered." *Id.* Relying on *Sackett I* and *Sackett III*, this court in *Bumbarger* concluded that the Bumbargers were statutorily entitled to the stacked limits of UM coverage:

> Therefore, because the Bumbargers added their third vehicle to the Peerless Policy by way of an endorsement, the new vehicle was covered under the general terms of the Peerless policy and not its after-acquired vehicle clause. *Sackett III, supra*. Moreover, because this new vehicle was added to the Peerless Policy before the Bumbargers' accident, Peerless was required, under *Sackett I*, to obtain a new waiver from the Bumbargers declining stacked coverage. *Id.*

*Id.* at 879.

As in *Bumbarger*, the policy in the instant case includes a newly-acquired-vehicle clause which does not apply to any vehicles shown in the Declarations. *See Bumbarger*, 93 A.3d at 878 ("However, for this coverage to apply to a 'newly acquired auto' **which is in addition to any vehicle shown in the Declarations,** you must ask us to insure it within 14 days after you become the owner," quoting Peerless Automobile Policy, Personal Auto Special Provisions (Pennsylvania Definitions) at Section K.2 (emphasis in *Bumbarger* )). Here, appellees notified their agent of the new vehicle, the 1990 Ford F–150, and requested proof of coverage before the purchase was completed. The agent then faxed a copy of the insurance card and issued amended declarations pages reflecting coverage of the new vehicle at an increased premium. As in *Bumbarger*, the after-acquired-vehicle provision in the Standard Fire policy is simply inapplicable. Therefore, we need not consider whether it is continuous or finite. Pursuant to *Sackett I, Sackett III*, and *Bumbarger*, appellees' addition of the 1990 Ford F–150 to the policy constituted a new "purchase" of UM/UIM coverage under Section 1738 of the MVFRL and required the execution of a new UM/UIM stacking waiver.

We find appellant's reliance upon *Shipp, supra*, and *Toner, supra*, to be misguided. In *Shipp*, the policy at issue had an identical after-acquired-vehicle clause as the policy in this case. *Shipp*, 51 A.3d at 223. However, *Shipp* involved a replacement for an existing vehicle, not an additional vehicle being added to the policy. *Id.* at 222–223. The after-acquired-vehicle clause of the policy at issue in *Shipp* provided continuing, uninterrupted coverage on a replacement vehicle without notice unless collision coverage was added or continued or a business vehicle was involved. *Id.* at 223. The court in *Sackett II*, as discussed above, held that continuing coverage subject only to a notice requirement did not require the insurer to re-obtain waiver of stacked UM/UIM coverage. *Id.* Since the insureds in *Shipp* simply replaced one vehicle with another at the same time, there was no change in the amount of UM/UIM coverage available to the Shipps, and the only change was in the identity of the covered vehicle. *Id.* at 224. As such, no new insurance coverage was purchased and Phoenix was not required to obtain a new waiver of stacked coverage from the Shipps. *Id.*

Here, by contrast, the 1990 Ford F–150 was not a replacement vehicle. Rather, it was added to the policy 44 days after appellees removed the 1989 Mazda B–2200 from their policy. At that time, the amended declarations pages listed only three vehicles and a decreased premium. Forty-four days later, appellees notified their insurance agent of their intention to purchase the 1990 Ford F–150 and amended declarations pages were issued. The 1990

Ford F–150 was not a replacement vehicle, as admitted by Mr. Gilmore, appellant's underwriter. Therefore, **Shipp** is inapposite.

Appellant also cites **Toner**, in which it was determined that the insurer, Travelers, was not required to provide Toner with a new waiver of stacking form when she added cars to her single vehicle policy. However, in **Toner**, the after-acquired-vehicle clause was at issue. **Toner**, 137 A.3d at 592. As such, **Toner** is distinguishable. We determine that the case **sub judice** is controlled by our supreme court's decisions in **Sackett I**, **Sackett III**, and this court's **en banc** decision in **Bumbarger**.

■ Finally, appellant argues that the trial court should not have permitted interpolicy stacking where the stacking waiver applicable to the single-vehicle policy remained valid and in effect at the time of the accident. (Appellant's brief at 36 n.5.) According to appellant, at most, appellees would be entitled to $400,000 of stacked UIM coverage, not $500,000. This issue was not raised in the court below or in appellant's Pa.R.A.P. 1925(b) statement. Therefore, it is deemed waived. Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a).

Judgment affirmed.

Strassburger, J., files a Concurring Opinion.

Stabile, J., files a Dissenting Opinion.

## CONCURRING OPINION BY STRASSBURGER, J.:

I join the Majority opinion.

The **Sackett** trilogy and **Bumbarger** compel the result that a new stacking waiver is required whenever a vehicle is added to a policy.

If I were writing on a *tabula rasa*, I would limit the requirement of a new stacking waiver to the addition of a vehicle to a single vehicle policy. When the one-car policy was originally purchased, there was likely nothing to stack because there was only one vehicle, and no reason for the policyholder to pay for stacking coverage that did him or her no good. When a second vehicle is added, that is usually the first time that the policyholder has to decide whether he or she wants stacking. Then it makes sense to require the insurer to provide a stacking waiver.

On the other hand, where a vehicle is added to a multi-vehicle policy, there is no reason to believe that a policyholder who has already rejected stacking, with its higher premium, would suddenly have a change of heart and want stacking. In that situation, the one we have here, it does not make sense to require a new waiver of stacking.

Nonetheless, the case law is what it is, and the Majority parses it correctly in my view, and thus I join.[1]

## DISSENTING OPINION BY STABILE, J.:

Appellees possess two insurance policies, a multi-vehicle policy and a single-vehicle policy, under which they executed stacking waivers for uninsured and underinsured motorist coverage ("UM/UIM"). The issue in this case is whether Appellant, Standard Fire Insurance Company ("Standard Fire"), was required to secure a new stacking waiver from Appellees when they added a 1990 Ford F–150 vehicle to their multi-vehicle policy by amending the policy's declaration pages at the time they assumed ownership of the vehicle. In **Sackett v. Nationwide**, 596 Pa. 11, 940

---

1. The insurance industry has no one to blame for this result other than itself. The industry writes the policies and could correct its problems.

A.2d 329 (2007) ("*Sackett II*"), our Supreme Court held that the addition of a vehicle to an existing policy under an after-acquired vehicle clause that extends coverage on a continuous basis does not constitute the "purchase" of "new" insurance that requires the execution of a new waiver form under Section 1738(c) of the Motor Vehicle Financial Responsibility Law ("MVFRL").[1] *Sackett II* notwithstanding, the Majority concludes that Appellees are entitled to stack across their two policies, since the new vehicle was added by way of amended declaration pages that made the policy's after-acquired vehicle clause inapplicable. In my opinion, the Majority unnecessarily limits the *Sackett II* holding and is at odds with the underlying rationale of our Supreme Court in that case. For purposes of construing Section 1738(c), there is no difference between adding a new vehicle to an existing policy by way of amending the declaration pages and adding a vehicle under an after-acquired vehicle clause, where both provide extension of coverage from time of acquisition of the vehicle on a continuous basis. Neither constitutes the purchase of new insurance that requires the execution of a new waiver form under Section 1738(c) as interpreted by our Supreme Court in *Sackett II*. I, therefore, respectfully dissent.

Appellees possess two insurance policies issued through Standard Fire. The first is a multi-vehicle policy that insures four vehicles, including the Mazda MX–6 that was involved in a July 23, 2001 accident. The second is a single-vehicle policy that insures a 1992 Toyota pickup. Both policies provide coverage for uninsured and underinsured coverage, but had signed waivers rejecting stacking of those benefits. In November 1996, Appellees removed a 1988 Plymouth Voyager from the multi-vehicle policy and replaced it with a 1993 Nissan Pathfinder. In February 1998, Appellees removed the 1989 Mazda B–2200 from their multi-vehicle policy, noting it had been "junked," and did not add a replacement at that time. Shortly thereafter, in April 1998, Appellees requested coverage under their multi-vehicle policy for a 1990 Ford F–150. Appellees notified their agent of this new vehicle and requested proof of coverage before they completed their purchase. Their agent faxed a copy of the insurance card and issued amended declaration pages reflecting coverage for this new vehicle and an increase in premium to the policy. At all times, Appellees' insurance policies reflected the benefit of lower premiums for unstacked UM/UIM motorist coverage. In fact, Appellees initially waived the amount of UM/UIM coverage that they now seek to stack.

As a result of the July 23, 2001 accident involving the Mazda MX–6, Appellees made a claim against Standard Fire for stacked underinsured motorist benefits under both policies after they received the liability policy limits from the driver who caused the collision. Appellees contend that Standard Fire was required to obtain new waivers for stacked underinsured benefits under the *Sackett* trilogy of cases [2] each time a vehicle replaced another under their policies of insurance. Since Standard Fire did not secure new waivers for stacked underinsured benefits when the 1990 Ford F–150 was added to the multi-vehicle policy, Appellees contend they now are entitled to stack underinsured benefits under both policies.

---

1. 75 Pa.C.S.A. § 1701 et seq.

2. The three cases are *Sackett v. Nationwide*, 591 Pa. 416, 919 A.2d 194 (2007) (*Sackett I*); *Sackett v. Nationwide*, 596 Pa. 11, 940 A.2d 329 (2007) (*Sackett II*); and *Sackett v. Nationwide*, 4 A.3d 637 (Pa. Super. 2010) (*Sackett III*).

In finding that Appellees were entitled to stack coverage under the two policies, the trial court rejected Standard Fire's contention that the policy's after-acquired clause is triggered every time a vehicle is added by an insurer to an existing policy. Instead, relying upon this Court's decision in *Bumbarger v. Peerless Indemnity Insurance Company*, 93 A.3d 872 (Pa. Super. 2014) (*en banc*), the trial court determined that, since the 1990 Ford F–150 was added by way of amended declarations pages, the new vehicle was covered under the "general terms of the policy" and the after-acquired vehicle clause never was triggered. Alternatively, the trial court offered if the after-acquired vehicle clause applied, the result would not change because the language of the after-acquired clause distinguishes between coverage for an added vehicle and a replacement vehicle. The trial court held the after-acquired clause was non-finite (continuous) in duration only as it pertains to replacement vehicles. Because the addition of the 1990 Ford F–150 was added as an additional vehicle, Appellant was required to offer or obtain a new stacking waiver from Appellees, assuming *arguendo* that the clause applied.

On appeal, Appellant Standard Fire argues execution of a new waiver form rejecting stacking was not required, since vehicles were replaced under the continuous after-acquired vehicle provision of the Standard Fire policy and not by endorsement or through the purchase of new insurance. Alternatively, Standard Fire contends that even if the 1990 Ford F–150 vehicle was an additional vehicle under the policy, no new waiver was required as the after-acquired vehicle provision provided for continuous coverage. In response, Appellees agree with the trial court's conclusion that the addition of a new vehicle under their policy at the time they were completing the vehicle purchase constitut-ed new insurance requiring Appellant to secure new waiver forms. Alternatively, Appellees maintain that the after-acquired vehicle clause was finite in coverage for additional vehicles and, therefore, new waiver forms were required under this scenario as well.

As in *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219 (Pa. Super. 2012), the Majority once again viewed the question here as involving the interpretation of Section 1738(c), and whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM coverage requiring the insurer to present the insured with a new opportunity to waive stacked coverage. Finding *Sackett I*, *Sackett III*, and *Bumbarger* to be controlling, the Majority concludes that the addition of the 1990 Ford F–150 vehicle to the policy did not trigger the after-acquired vehicle clause. Citing *Bumbarger* in particular, the Majority concludes that the after-acquired vehicle clause did not apply to vehicles shown in the policy Declarations. Majority Opinion at 490. The 1990 Ford F–150 was not a replacement vehicle, but rather, was added by way of amended declaration pages some 44 days after another vehicle was removed from the policy. Therefore, the addition of the 1990 Ford F–150 to the policy constituted a new "purchase" of UM/UIM coverage under Section 1738 and required the execution of a new UM/UIM stacking waiver. *Id.* As such, it was unnecessary to discuss whether coverage was finite or continuous under the after-acquired vehicle clause.

Section 1738 of the MVFRL provides:

**Stacking of uninsured and underinsured benefits and option to waive**

**(a) Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the

stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

*(c) More than one vehicle.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage* and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (emphasis added).

In *Sackett I,* our Supreme Court addressed *the statutory interpretation* of Section 1738(c) to determine whether insureds must be given the opportunity to waive stacking of UM/UIM coverage for each instance an insured adds a vehicle to an existing policy. Based solely upon its interpretation of the statutory language of 1738(c) (each named insured purchasing uninsured or underinsured motorist coverage ... shall be provided the opportunity to waive the stacked limits of coverage), the Court answered in the affirmative. The Court held that when an insured purchases uninsured or underinsured motorist coverage for more than one vehicle under a policy, the insurer has to provide a new stacking waiver each time a new vehicle is added to a policy. The Court made certain, however, to explain that its holding did not extend to instances where an insured replaces a vehicle or renews a policy, as those instances are not considered purchases of new insurance under Section 1738.

Almost immediately after deciding *Sackett I,* the Court agreed to grant reargument requested by the insurer after inviting and receiving an *amicus* statement from the Insurance Commissioner of Pennsylvania. In his statement, the Commissioner offered his disagreement with *Sackett I*'s central conclusion that an *addition* of a new vehicle to an existing multi-vehicle policy constitutes a new purchase of coverage. The Commissioner explained that throughout Section 1738's 17-year history, once policies are put into place, the Department has not treated the addition of a new vehicle, known as an "add-on," as a new purchase of insurance. Rather, the Department deems this to be an *extension* of pre-existing coverage and it has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies to reaffirm the continuation of unstacked UM/UIM coverage. *Implicit in this explanation is that Section 1738(c)'s mandate that an insured be offered an opportunity to execute a stacking waiver applies only upon the initial purchase of an insurance policy.* The Commissioner further explained that the *mechanism* by which vehicles *generally* are added to existing policies is via "newly-acquired vehicle clauses," which are practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operating a motor vehicle. These clauses universally are included within automobile insurance policies issued in Pennsylvania. They permit consumers to extend existing coverage, with the same applicable types of coverage

and limits, to new and/or substitute vehicles with coverage applying automatically upon acquisition, subject to various conditions, including timely subsequent notice to the insurer. This procedure facilitates immediate consumer transactions and affords predictability and certainty in terms of the availability and scope of coverage. It was the Commissioner's position that *Sackett I* effectively nullifies newly-acquired vehicle clauses and policies and strips policyholders of the associated benefits of these clauses. *Sackett II*, 940 A.2d at 331.

Upon re-argument, the *Sackett II* Court stated that it believed the Insurance Commissioner's argument that a UM/UIM stacking waiver remains in effect upon the acquisition of a vehicle covered under contractual after-acquired-vehicle provisions has substantial force. *Id.* at 333. The Court was concerned that *Sackett I* could be read as negating the effect of after-acquired-vehicle clauses, particularly since the mechanics of those provisions were not meaningfully developed in the initial proceedings in the case. *Id.* at 332. It thus clarified that *Sackett I* does not preclude enforcement of an initial waiver of stacked UM/UIM coverage extended under after-acquired-vehicle provisions of an existing multi-vehicle policy. *Id.* The Court accepted the Insurance Commissioner's position that the *"purchase"* of UM/UIM coverage under Section 1738(c) is a *term of art* [3] that does *not* include an *extension* of coverage under a contractual after-acquired-vehicle provision. The Court therefore held that an extension of coverage under an after-acquired-vehicle provision for a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage under

Section 1738(c) that would trigger an obligation on the part of an insurer to obtain new or supplemental stacking waivers. *Sackett II*, 940 A.2d at 334. The Court's inquiry, however, did not end with this conclusion. What remained to be considered was the duration of the automatic coverage under a policy's after-acquired-vehicle provision. This was in recognition of the fact that these clauses are contractual in nature and that the mechanics of each clause has to be examined. *Id.* at 334, n.6.

Recognizing that after-acquired vehicle clauses may not always provide continuous coverage upon notice of acquisition of another vehicle, the Court instructed that only to the degree coverage under a particular after-acquired vehicle provision continues in effect throughout the existing policy, subject only to conditions such as notice and payment of premiums, its decision in *Sackett I* should not disturb the effect of an *initial* UM/UIM stacking waiver obtained in connection with a multi-vehicle policy. *Id.* at 334. It emphasized that the term *"purchase"* as used in Section 1738, did *not* include adjustments to the scope of an existing policy containing an after-acquired vehicle clause that continues in effect throughout the existing policy. *Id.* However, where coverage under such a clause is made expressly *finite* by the terms of the policy, its decision in *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon expiration of the automatic coverage for the unstacked coverage option to continue in effect subsequent to the expiration

**3.** In interpreting the after-acquired vehicle clause in *Sackett II*, the Court was guided by two principles of statutory construction. The first, that words and phrases are to be construed according to rules of grammar and their common and approved usage. The second, that when technical words and phrases have acquired a peculiar and appropriate meaning, they are to be construed in accordance with such meaning or definition. *Sackett II*, 940 A.2d at 333.

of the finite coverage. *Sackett II*, 940 A.2d at 334.[4]

While it is true that the Supreme Court's decision in *Sackett II* concerned only whether new waiver forms had to be executed under Section 1738(c) when additional vehicles were added under an existing policy's after-acquired vehicle clause, nothing in the Court's opinion suggests that its rationale is limited only to after-acquired vehicle clauses. In fact, the rationale in *Sackett II* is equally applicable, if not more compelling, when vehicles are added under an existing policy's declaration pages at the time of a vehicle's purchase.

As explained, an after-acquired vehicle clause allows an insured to automatically extend existing coverage upon acquisition of a new vehicle without the knowledge of the insurer, so long as notice is provided to the insurer within a defined period of time. Under *Sackett II*, adding a vehicle in this manner is not the purchase of new insurance that requires the execution of a new waiver form. Notice to the insurer is required so that coverage can be updated to reflect changes in the vehicles insured.[5] On the other hand, when an insured advises an insurer of the purchase of a new vehicle upon acquisition so that the policy's declaration pages may immediately be amended to reflect an extension of coverage, the grace period for notice under an after-acquired vehicle clause is not necessary. Continuous coverage is extended without this notice contingency. Under either scenario, a vehicle is added to an existing policy that extends continuous coverage upon acquisition of the vehicle. The only difference between the addition of a vehicle under an after-acquired vehicle clause and one added by way of amended declaration pages is the timing in which an insurer learns the identity of the newly-acquired vehicle. The effect of adding a vehicle either by invoking an after-acquired vehicle clause or by amending the declaration pages presents a difference without a distinction for purposes of examining *Sackett II* and Section 1738(c). Effectively, adding new vehicles by way of amending declaration pages is a more efficient means of extending coverage than under an after-acquired vehicle clause that requires subsequent notice to the insurer. Therefore, no reason exists to consider differently the extension of coverage under either means for purposes of determining whether new waiver forms are required under Section 1738(c). Neither constitutes the purchase of new insurance and both allow an insured to extend continuous coverage immediately upon acquisition of a new vehicle. As explained in *Sackett II*, serial waiver forms are not required under Section 1738(c) when continuous coverage is extended for an additional vehicle under an existing policy.

The conclusion that new waiver forms are not required under Section 1738(c) when a vehicle is added to the declaration pages of an existing policy, also is consistent with Section 1791 of the MVFRL and this Court's decision in *Smith v. Hartford Ins. Co.*, 849 A.2d 277 (Pa. Super. 2004). In light of this, the result in *Sackett I* was reaffirmed.

**4.** As for its specific holding upon re-argument regarding the policy in *Sackett I*, the Court noted that the general provisions of the insurer's policy, including the after-acquired-vehicle clause and its associated definitions, were not in the record. It therefore could not determine the duration of coverage extended under that particular after-acquired-vehicle clause.

**5.** At the time of application and every renewal, an insurer must provide an insured a "declaration of coverage limits and premiums for the insured's existing coverages." 75 Pa. C.S.A. § 1791.1.

In **Smith**, the insured purchased automobile insurance in February 1990 which included $300,000 of UM/UIM motorist coverage. In June 1990, the insured executed a waiver of UIM coverage. In 1994, the insured increased liability coverage to $500,000. In 1999, the insured was involved in a car accident with an alleged underinsured driver. In part, the insured claimed entitlement to underinsured coverage[6] based upon the argument that the insurer had not supplied new rejection forms at the time he increased the limits of his liability coverage. The insured argued that by increasing the policy limits for liability coverage, he had purchased a new insurance policy thereby requiring that the insurer supply new rejection forms. This Court disagreed, holding that no new rejection form was required. Section 1791 provides in pertinent part as follows:

> It shall be presumed that the insured has been advised of the benefits and limits available under this chapter[7] provided the following notice in bold print of at least 10 point type is given to the applicant at the time of application for original coverage, *and no other* notice or *rejection shall be required.*

75 Pa.C.S. § 1791 (emphasis added). As this Court explained,

> The General Assembly in writing this certainly knew that the purchase of an insurance policy was not a lifetime contract. Policies are renewed, vehicles are bought and sold, amounts of coverage change. *Yet, in spite of this knowledge, the General Assembly has specifically stated that once the applicant has purchased the policy and been informed of*

> *the choices available, no other notice or rejection shall be required.*

**Smith**, 849 A.2d at 280 (emphasis added).

This Court also noted in **Smith** that its conclusion was consistent with the statutory scheme outlined in Section 1705 of the MVFRL regarding election of tort options. The full tort option is the default provision. However, once an affirmative election is made, that election is presumed to be in effect throughout the lifetime of that policy. *See* 75 Pa.C.S.A. § 1705(b)(1). This Court saw little difference in being able to waive the right to seek non-economic damages and the ability to reject certain optional coverages. Once an election is made, that decision carries forward until affirmatively changed. I perceive no logical reason to distinguish our holding in **Smith** that an increase in liability coverage does not constitute the purchase of new insurance that would require the execution of new rejection forms from the instant situation where we must decide if adding a vehicle under an existing policy constitutes the purchase of new insurance that would require the execution of a new waiver form. Section 1791 unambiguously states that no new notice or rejection[8] is required after the time of application for original coverage.

Turning now to the specifics of the Standard Fire policy, and in accord with the Supreme Court's instruction that the mechanics of a contractual provision be examined to determine if new waiver forms are required, I conclude that new waiver forms for UM/UIM coverage were not required when Appellees added their 1990 Ford F-150 to their existing policy by way of amending the policy's declaration pages.

---

6. The UIM claim stemmed from injuries to the insured's wife who was considered a "guest passenger" in his vehicle.

7. The "chapter" referenced in this provision includes Section 1738.

8. In my opinion, a "rejection" is synonymous in this context with a "waiver" that rejects stacking coverage.

The Standard Fire policy provides as follows:

### DEFINITIONS

J. *"Your covered auto" means*:

1. *Any vehicle shown in the Declarations.*

2. *Any of the following types of vehicles on the date you become the owner*:

    a. a private passenger auto; or

    b. a pickup or van.

This provision *(J.2.) applies only if*:

a. you acquire the vehicle during the policy period;

b. *you ask us to insure it within 30 days after you become the owner*; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

*If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.* You must ask us to insure a replacement vehicle within 30 days only if:

a. you wish to add or continue Damage to Your Auto Coverages; or

b. it is a pickup or van used in any "business" other than farming or ranching.

*If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.*

(Policy No. 20185337, Personal Auto Policy at 1; Exhibit A to both Motions for Summary Judgment) (emphasis added).[9]

Paragraph J.1 of this policy extends coverage to vehicles shown on the policy's Declarations. The policy contains no term that would deem this coverage finite. When Appellees added their 1990 Ford F-150 to this existing policy by way of amending the declaration pages, their vehicle was insured immediately and continuously upon acquisition, subject, of course, to the payment of premium. No further notice to the insurer was required.

The after-acquired vehicle clause at paragraph J.2, likewise provides that an added vehicle to this existing policy is covered commencing on the day of ownership subject to providing notice to the insurer within 30 days of acquisition. There likewise is no finite contingency. Coverage is continuous, and if the auto is in addition to any vehicle shown in the declarations, coverage provided is the broadest for any vehicle shown in the declarations. Under *Sackett II*, vehicles added under this after-acquired vehicle clause would not require the execution of new waiver forms, since the mechanics of this clause, like the amended declarations, extends coverage on a continuous basis. Adjustments to the scope of coverage under an existing policy do not deem the extension of that coverage the purchase of new insurance under Section 1738(c). *See Sackett II*, 940 A.2d at 333; *see also Smith, supra*. Ultimately, consistent with *Sackett II*, the mechanics of both provisions accomplish the same objective to extend coverage to a new vehicle under an existing policy on a continuous basis. Neither constitutes the purchase of new UM/UIM coverage that would require the execution of a new waiver form.

Citing *Bumbarger*, the Majority concludes that the after-acquired-vehicle provision in the Standard Fire policy is inapplicable because that clause does not apply to vehicles shown in the policy's Declara-

---

9. This definition of a *"covered auto"* includes at paragraph J.2 what has been referred to as the after-acquired vehicle clause. Autos included in the declarations also are insured without reference to the after-acquired vehicle clause.

tions. Majority Opinion at 490. The Majority further concludes that pursuant to *Sackett I, Sackett III,* and *Bumbarger,* the addition of the 1990 Ford F–150 to the policy by Appellees constituted a new "purchase" of UM/UIM coverage under Section 1738 and required the execution of a new UM/UIM stacking waiver. Majority Opinion at 490. In essence, the Majority reads *Sackett I, Sackett III,* and *Bumbarger* to hold that the execution of a new waiver form is unnecessary for UM/UIM coverage under an existing policy only if the vehicle is added by way of an after-acquired vehicle clause. The Majority applies this holding in a mechanical fashion without examining the bases upon which our Supreme Court came to its conclusion in *Sackett II.* As explained above, I believe this to be in error, since doing so blindly ignores the rationale upon which the Court reached its decision in *Sackett II.* The Majority errs by failing to examine the mechanics of this policy, and in particular, how vehicles are added and insured by way of amending the policy's declaration pages. In doing so, the Majority ignores the instruction in *Sackett II* that the language of a policy and the mechanics of its clauses must be examined when considering these stacking issues. Had the Majority engaged in this exercise, it could have discerned that the addition of a new vehicle by amendment to the declaration pages extends immediate coverage on a continuous basis the same as adding a vehicle under an after-acquired vehicle clause, thus satisfying the criteria under *Sackett II* that would not require the execution of a new waiver form.

In *Bumbarger,* the insured added a third vehicle to her policy by way of an "endorsement" and a fourth by way of an "amended declarations page." After discussing our decision in *Sackett II* and in *Shipp,* we automatically concluded that because the additional cars were added under the policy's endorsement provision and placed on the policy's declarations page immediately after purchase, the after-acquired vehicle clause became irrelevant.[10] This Court held that because the insureds added their third vehicle to the insurance policy by way of an endorsement, the new vehicle was covered under the "general terms of the policy" and not its after-acquired vehicle clause. This Court, however, did not disclose or discuss the text of those provisions. It therefore is impossible to determine from reading *Bumbarger* how the language of those provisions and the remainder of the policy might produce the result reached in that case. This Court simply borrowed the results from the *Sackett* cases and *Shipp* without analyzing how those cases reached their conclusions based upon an examination of the contractual terms of the policies at issue. This violates what our Supreme Court said in *Sackett II:* that the mechanics of these clauses must be examined. Our decision in *Bumbarger,* therefore, is of limited usefulness in determining how a policy's declarations, endorsements, and general policy terms fit together to understand contractually how coverage is provided and how that may affect the need to acquire new waiver forms.

In my view, it also is error for the Majority and for this Court in *Bumbarger,* to state that if a vehicle is added by way of an "endorsement," the vehicle is covered under the "general terms of the policy" and not the after-acquired vehicle clause. *See* Majority Opinion at 489–90, *citing*

---

10. Alternatively, this Court held that, since the vehicles were added and not replacements, that the language of the newly-acquired vehicle clause did not automatically extend coverage until and unless the insured requested coverage within 14 days after becoming the vehicle owner. I take no issue with this part of the Court's decision.

*Bumbarger,* 93 A.3d at 874, 879. The after-acquired vehicle clause is a part of the general terms of the policy. It is a part of the policy's definitions. Endorsements generally amend a policy's terms by adding or subtracting terms from the policy's general provisions. The general terms, declarations, and any endorsements all comprise the policy and must be read together. Each of these components has no meaning unless they are read in conjunction with each other.

I also take issue with the Majority's characterization of *Bumbarger.* The Majority states that, in *Bumbarger,* we held "[a]n after-acquired vehicle provision merely extends existing coverage until the insured notifies the insurer that he wishes to insure the new vehicle under his policy with the insurer. The after-acquired vehicle clause extends temporary, stop-gap coverage, thereby protecting the insured until the policy can be amended." Majority Opinion at 488 (citing *Bumbarger,* 93 A.3d at 877–878). This was the interpretive position taken by the insureds in that case, but not adopted as a general principle by this Court. Although I do not doubt that an after-acquired vehicle provision may be written in such a manner, again, only an examination of each policy's provisions can determine if this in fact is the effect of an after-acquired vehicle clause. In this case, it clearly is not, as the after-acquired vehicle provision extends coverage continuously from the date the insured becomes owner of a vehicle. Once a vehicle is added to the policy, the coverage is continuous, not temporary. The after-acquired vehicle clause only provides the mechanism by which the vehicle is added to existing coverage.

The Majority's reliance upon *Sackett III* is troubling for a number of reasons as well. After remand to the trial court and appeal again to this Court, we were called upon in *Sackett III* to determine whether the insurer had a duty to provide stacked UIM motorist coverage to the insureds when they added a Ford Windstar to their existing policy through an "endorsement." This Court held that once the insureds added their Ford Windstar to their policy through an "endorsement," the insurer had to secure a new waiver to prohibit the insureds from stacking UIM benefits. The after-acquired vehicle clause in that case provided that coverage would apply to the insureds' motor vehicles "only if you do not have other collectible insurance." *Sackett III,* 4 A.3d at 640, n.2. This Court considered the addition of the vehicle to the insurance policy by way of endorsement to be other "collectible insurance." It held that after the Ford Windstar was added to the policy by way of an endorsement, the vehicle was covered under the "general terms of the policy" and not its after-acquired vehicle clause. To be certain, this Court also held that once the insureds added their vehicle by way of endorsement, the after-acquired vehicle clause expressly terminated coverage and nullified any coverage they may have had under the after-acquired vehicle clause. Alternatively, this Court found that the after-acquired vehicle clause in *Sackett III* was inherently finite, since it only provided coverage during the first thirty days when a new vehicle was added to the policy and required that the insureds take steps to insure the vehicle after that time.

I believe this Court was in error in *Sackett III* in concluding that the addition of a vehicle to an insurance policy by way of an "endorsement" was other "collectible insurance" to defeat extension of coverage that might be applicable under an after-acquired vehicle clause.[11] Regrettably, a

---

11. In my opinion, this Court in *Sackett III*

correctly determined that the after-acquired

more critical examination of this part of the *Sackett III* decision is not possible, since this Court did not include the language of the endorsement in its discussion so that the mechanics of that clause, as per *Sackett II*, could be examined. Be that as it may, I find it incredulous that the addition of a vehicle by way of a policy "endorsement" would constitute other "collectible insurance" when the added vehicle is at the same time subject to being insured under the same policy to which the endorsement has been added. Other "collectible insurance" limits an insurer's liability when there is *another* policy applicable to a claim for a loss. *See Harstead v. Diamond State Ins. Co.*, 555 Pa. 159, 723 A.2d 179 (1999) (one type of another insurance clause is an escape clause that seeks to avoid all liability were other coverage is available). It is improper to speak of an "endorsement" as "other collectible insurance" when an endorsement merely adds or subtracts terms to an existing policy. An endorsement to a policy does not constitute a separate policy of insurance. I believe this part of the *Sackett III* decision evidences a fundamental misunderstanding of an insurance policy. Regrettably, the use of labels like "endorsement," "after-acquired," and "declarations" after *Sackett III* now have caused this Court, as here, in an almost mechanical fashion, to decide stacking and waiver issues on the manner by which a vehicle is added to a policy without an examination of the mechanics of a policy's terms and whether those comport with the rationale of the *Sackett II* decision.[12]

In *Bumbarger*, this Court stated that when faced with analyzing a stacking issue, it must focus on the following: "(1) how was the "new" vehicle added onto the existing automobile policy (*i.e.*, via endorsement or newly-acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy." *Id.*, 93 A.3d at 876. I believe the first inquiry as to how a vehicle is added to an existing policy is misleading, as it potentially places form over substance. It invites the application of labels (*e.g.*, "endorsement," "after-acquired vehicle clause," "declarations," "general terms of a policy") as being dispositive in a case without analyzing the mechanics of the terms of a policy. Instead, I believe a better approach is to ask first whether the newly-acquired vehicle is covered under the existing policy regardless of how that occurs, and if so, whether coverage is continuous from the date the vehicle is added to the policy. By necessity, the next inquiry would require that the specific language of the policy be examined, as per the second line of inquiry suggested in *Bumbarger*. This would eliminate the current confusion in attempting to decide these stacking cases and interpreting insurance policies by parsing labels such as "endorsements," "declarations," "after-acquired clauses," "replacement vehicles," and "additional vehicles" to determine if a new policy of insurance has been purchased.

In many of these stacking cases, we are faced initially with the legislative direction under Section 1738(c) that an insured must

---

vehicle clause was finite in duration, thus requiring new stacking waivers, since the insureds were required to purchase new insurance after thirty days. The result is consistent with our Supreme Court's holding in *Sackett II* that new waiver forms are not required if the after-acquired vehicle clause provides continuous coverage.

12. Although I take issue with the manner in which *Sackett III* and *Bumbarger* were decided, this dissent would not overrule the decisions in those cases, since as stated, the terms of the endorsements that were dispositive in those cases were not disclosed, thus preventing us now from giving precedential effect to the interpretation of those provisions.

be provided an opportunity to waive stacked coverage of UM/UIM coverage when an insured purchases coverage for more than one vehicle. Since *Sackett II*, our Supreme Court has permitted this legislative directive to be considered as affected by the mechanics of the contractual language of a policy. New waivers are required when there has been a "new" purchase of insurance. New insurance does not include additions to an existing policy that merely extends coverage on a continuous basis. Ultimately, decisions in stacking cases must rest upon an examination of contractual language. Interpreting contracts is nothing new to our courts. The resolution of these cases can be and will be made much simpler if we return to interpreting contracts, as opposed to deciding cases based purely upon the manner in which a vehicle is added to a policy. The latter ignores our duty to engage in contractual analysis and prevents us from properly differentiating between cases. Instead, I would simply focus on the mechanics of a policy and whether the insured has added a vehicle that continues to be covered under an existing policy, or whether the vehicle is to be insured under a new policy of insurance. This would facilitate easier administration of these policies by the insurer and a simpler understanding of coverage by the insured.

Unlike the trial court, the Majority also concludes that Standard Fire's after-acquired vehicle clause does not apply here and, therefore, it did not find the need to consider whether that clause provided continuous or finite coverage. If it were necessary to address the after-acquired vehicle clause, I would find that the trial court erred when it concluded the clause to be continuous only as it pertains to replacement vehicles. It reached this conclusion by considering that to do otherwise would render the first 30-day notice requirement under the after-acquired vehicle clause superfluous.

Standard Fire's after-acquired vehicle clause provides that a covered auto is both one shown in the declarations or an auto on the day an insured becomes its owner. However, a replacement or additional vehicle remains only continuously insured if Standard Fire is asked within 30 days to insure the vehicle. With respect to replacement vehicles, the clause provides that a replacement vehicle will have the same coverage as the one it replaces, unless within 30 days the insured desires to change amounts of coverage. In the case of an additional vehicle, the clause provides that the replacement vehicle will have the broadest coverage provided for any vehicles shown in the declarations. The 30-day provisions under this after-acquired vehicle clause serve two separate functions and are not superfluous of each other. With either a replacement or additional vehicle, the insured must notify Standard Fire of the vehicle within 30 days to continue coverage. In the case of a replacement vehicle, which automatically will have the same coverage as the one replaced, the insured must within 30 days notify the insurer if the insured desires not to have the same coverage as the one replaced. The first 30-day period is a notice provision to continue coverage from the date of ownership. The second 30-day provision applies only if the insured desires to change coverage for a replacement vehicle which otherwise would continue with the same coverage as the vehicle replaced. Neither of these notice provisions defeats the continuous coverage provided under the after-acquired vehicle clause. Accordingly, the first 30-day clause does not render the second superfluous.

Finally, I agree with my learned colleague in his concurring opinion that it does not make sense to require a new waiver of stacking when a vehicle is added

to a multi-vehicle policy, as there is no reason to believe a policyholder who already has rejected stacking with its higher premium, would have a change of heart and want stacking. I do, however, respectfully disagree with the concurrence that when a single-vehicle policy is purchased, there is nothing to stack because there only is one vehicle and there is no reason for a policyholder to pay for stacked coverage that does him or her no good. The demand made by Appellees aptly demonstrates why this supposition is not always true. Appellees are attempting to stack their single-vehicle policy with their multi-vehicle policy. While on the face of a single-vehicle policy it is tempting to come to the conclusion there is nothing to stack, stacking under a single-vehicle policy was expressly acknowledged by our Supreme Court in *Craley v. State Farm Fire and Casualty Company*, 586 Pa. 484, 895 A.2d 530 (2006), wherein the Court discussed both inter- and intra-policy stacking. Again, taking guidance from our Insurance Commissioner, the Court recognized that stacking was lawful under a single-vehicle policy in at least two situations. First, where an insured is injured in his own vehicle that has uninsured motorist coverage and also is covered as an insured under another policy providing uninsured motorist benefits. And second, where an individual is injured in a vehicle other than his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has uninsured motorist coverage (such as an employer's vehicle). *Id.* at 537. A waiver of stacking under a single-vehicle policy indeed serves a salutary purpose. Waiving stacking under a single-vehicle policy serves the intended purpose to limit coverage and to lower premiums.

In conclusion, I would reverse the trial court's decision that Appellant here was required to obtain a new stacking waiver when Appellees added their 1990 Ford F–150 vehicle to their multi-vehicle policy at the time of purchase by amending the declaration pages of their policy. Under the terms of Appellees' policy, coverage existed as of the day they purchased the vehicle and became its owner. This coverage was continuous from acquisition and did not constitute the purchase of "new" insurance under Section 1738(c) that would require the execution of a new waiver form. I reach this conclusion by giving effect to all the terms of the Standard Fire policy in accord with interpretative principles our Supreme Court detailed in *Sackett II*. In my opinion, the Majority errs by ignoring these principles and by attempting to apply the holdings of previous cases without a proper and full examination of the Standard Fire policy terms at issue in this case. I, therefore, respectfully dissent.